CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 18 2018

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MICHAEL W. WARD,                )
                                )
    Plaintiff,                  )   Civil Action No. 7:17CV00310
                                )
v.                              )   **MEMORANDUM OPINION**
                                )
NANCY A. BERRYHILL, Acting      )   By: Hon. Glen E. Conrad
Commissioner of Social Security,)   Senior United States District Judge
                                )
    Defendant.                  )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Michael W. Ward, was born on December 7, 1975, and eventually completed his high school education. Mr. Ward has been employed as a certified nursing assistant (CNA), truck driver, security guard, and newspaper delivery person. He last worked at the beginning of January 2013. On March 11, 2013, Mr. Ward filed an application for a period of disability and disability insurance benefits. In filing his current claim, Mr. Ward alleged that he became disabled for all forms of substantial gainful employment on January 9, 2013, due to diabetes, nerve

damage in his legs and feet, and depression. (Tr. 189). Mr. Ward now maintains that he has remained disabled to the present time. The record reveals that Mr. Ward met the insured status requirements of the Act through the fourth quarter of 2014, but not thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before his date last insured, December 31, 2014.

Mr. Ward's application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 28, 2015, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Ward was not disabled on or before his date last insured.[1] See 20 C.F.R. § 404.1520. The Law Judge found that Mr. Ward suffered from several severe impairments through that date, including obesity, diabetes, diabetic peripheral neuropathy, left heel spur, and bilateral lower extremity varicose veins, but that these impairments did not, either individually or in combination, meet or medically equal the requirements of a listed impairment.[2] (Tr. 10–12). The Law Judge then assessed Mr. Ward's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with exceptions. The claimant could lift and carry twenty pounds occasionally and ten pounds frequently. In an eight-hour workday, he could stand and/or walk for two hours and sit for six or more hours with normal breaks. The claimant

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) has engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 404.1520. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

[2] Although plaintiff requested medication for symptoms of depression during the relevant period, the Law Judge found that any mental impairment was not severe. (Tr. 11).

2

> could never use his left lower extremity and occasionally use his right lower extremity to operate foot controls. He could never crawl or climb ladders, ropes, and scaffolds, but could frequently balance and occasionally climb ramps and stairs, kneel, crouch, and stoop/bend. The claimant could tolerate no more than occasional exposure to vibration and could tolerate no exposure to hazards such as machinery and heights.

(Tr. 13). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Ward was unable to perform any past relevant work through the date last insured. (Tr. 21). However, the Law Judge found that plaintiff retained the capacity to perform other work roles existing in significant number in the national economy. (Tr. 22–23). Accordingly, the Law Judge concluded that Mr. Ward was not disabled at any time from the alleged onset date through the date last insured, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Ward has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion

3

reflects a thorough evaluation of Mr. Ward's medical problems and the extent to which they affected his ability to work. Although Mr. Ward suffered from a combination of impairments, substantial evidence supports the Law Judge's determination that he retained the residual functional capacity to perform certain sedentary work roles through his date last insured.

The record reflects that Mr. Ward was diagnosed with Type II diabetes in January of 2010, prior to his alleged onset date. (Tr. 463). He was established as a new patient at New Horizons Healthcare in August of 2011, where he was examined by Dr. Ayesha Nazli. (Tr. 463–66). Based on plaintiff's critically high glucose level, Dr. Nazli counseled him on the importance of medication compliance, diet, and exercise. When Mr. Ward returned three months later, Dr. Nazli recommended that he go to the emergency room for uncontrolled diabetes. (Tr. 462). Although Mr. Ward was instructed to return for a follow-up appointment two weeks later, the record contains no indication that he complied with the physician's instructions.

In 2012, plaintiff presented to the emergency room at Carilion Roanoke Memorial Hospital on several occasions. In March, plaintiff complained of dental and facial pain. He denied experiencing any back or joint pain, and exhibited no tenderness or edema on physical examination. (Tr. 285–86). The attending physician prescribed Mobic, Ultram, and Amoxycillin, and referred plaintiff to a dental clinic. (Tr. 290). Mr. Ward returned in July with complaints of a rash and right lower extremity pain. (Tr. 300). At that time, he was noted to be "morbidly obese." (Tr. 301). On physical examination, plaintiff exhibited normal range of motion, sensation, strength, and reflexes, and no edema or weakness. (Tr. 301). Vascular testing was negative for deep vein thrombosis (DVT) or superficial vein thrombosis (SVT). The examination notes reveal a differential diagnosis of diabetic neuropathy. (Tr. 303).

The following month, Mr. Ward returned to the emergency room with complaints of generalized body aches, lightheadedness, and blurred vision. (Tr. 320). His physical

4

examination was normal, but his glucose level was 373. (Tr. 312–13). Diabetic medications were administered and plaintiff was discharged with a diagnosis of uncontrolled diabetes. (Tr. 316). On October 31, 2012, plaintiff presented to the emergency room with shortness of breath. However, his physical examination revealed no signs of respiratory distress and was otherwise normal. (Tr. 332). Diabetic medications were administered and plaintiff was discharged with an inhaler for bronchitis. (Tr. 335). Less than two weeks later, plaintiff returned with complaints of back pain associated with lifting patients at work. He exhibited some tenderness on physical examination, but his range of motion was normal. The examining physician diagnosed him with a low back strain for which he prescribed Naprosyn and Flexeril, and recommended that plaintiff perform stretching exercises. (Tr. 355).

In February of 2013, after the alleged onset date of disability, Mr. Ward was established as a new patient at Carilion Blue Ridge Family Practice, where he was seen by Dr. Sarat Burri. Dr. Burri noted that plaintiff had not been taking his diabetic medications for several months, but that he had been trying to "watch his diet and walk 2-3 times per week." (Tr. 253). Plaintiff complained of worsening pain in his feet and legs, which he primarily experienced at night. An examination of plaintiff's lower extremities was "grossly normal." (Tr. 254). Dr. Burri diagnosed Mr. Ward with several conditions, including uncontrolled Type II diabetes, diabetic neuropathy, and morbid obesity. (Tr. 255). He adjusted plaintiff's medications and recommended that plaintiff exercise thirty minutes a day, five days per week. (Tr. 255).

Mr. Ward returned for a follow-up appointment on March 12, 2013. At that time, plaintiff reported that his neuropathic pain had improved while taking Neurontin, but that he had recently experienced pain in his right shoulder. (Tr. 260). Dr. Burri noted that the pain was mostly likely from a strain or sprain, and recommended that plaintiff take Tylenol and apply warm compresses. (Tr. 262). The following month, plaintiff reported that his neuropathic pain had continued to

5

improve, but that his feet still bothered him. (Tr. 266). He denied having any other complaints and his musculoskeletal evaluation was "grossly normal." (Tr. 267).

On April 22, 2013, plaintiff presented to the emergency room with left ankle pain. He reported that he had injured his ankle while playing basketball. (Tr. 402). On physical examination, plaintiff exhibited normal range of motion and no edema. (Tr. 403). Plaintiff was diagnosed with a left ankle sprain, and he exited the emergency room without any difficulty. (Tr. 404, 406).

Plaintiff presented to Dr. Burri on August 30, 2013 with complaints of feet and leg pain. Dr. Burri noted that plaintiff had been "very non compliant with medication use and follow up," and that he had been "seen back in April and advised [to] recheck in 2 weeks but never followed up." (Tr. 445–46). Plaintiff also reported experiencing anxiety and depression for a few months, and requested medication for his mental health symptoms. Dr. Burri noted that plaintiff's musculoskeletal examination was "grossly normal," as were his "mood and affect." (Tr. 447). Dr. Burri increased plaintiff's dosage of Neurontin, prescribed Zoloft for his symptoms of anxiety and depression, and directed plaintiff to return for a follow-up appointment in a month. (Tr. 448).

Mr. Ward missed several scheduled appointments before returning to Dr. Burri on December 3, 2013. Dr. Burri once again noted that plaintiff had been "very non compliant with medication use and follow up." (Tr. 592). Plaintiff advised that his symptoms of depression and anxiety had improved with medication. (Tr. 593). His musculoskeletal examination was "grossly normal," and he denied experiencing muscle or joint pain. (Tr. 594). Dr. Burri noted that plaintiff's diabetes remained uncontrolled, and that he was going to refer plaintiff to an endocrinologist. (Tr. 595).

In April of 2014, Mr. Ward was established as a new patient at Carilion Roanoke Salem Family Medicine, where he was seen by Dr. Farzana Quraishi. Plaintiff reported that he had not

6

been able to control his diabetes with the existing medication regimen, and that he was experiencing pain, numbness, and tingling in his left lower extremity. (Tr. 470). Plaintiff's physical examination revealed edema primarily in the area of his left ankle, with superficial varicose and spider veins noted. (Tr. 471). Dr. Quraishi adjusted plaintiff's medications and recommended that he elevate his legs and wear compression stockings. (Tr. 472). She also emphasized that plaintiff would need to control his diabetes in order for his neuropathy to improve. (Tr. 472). Mr. Ward failed to appear for a follow-up appointment on May 30, 2014, and was advised that repeated missed appointments would lead to dismissal from the practice. (Tr. 479).

Plaintiff returned to Dr. Quraishi on August 20, 2014, at which time he complained of headaches, dizziness, and left foot pain. (Tr. 490). Dr. Quraishi noted that plaintiff had a heel spur for which he had sought treatment from an orthopedic specialist, and that his left foot exhibited localized edema and tenderness. (Tr. 491). Dr. Quraishi adjusted plaintiff's medications and recommended that he exercise five days a week for thirty minutes. (Tr. 492).

Mr. Ward did not return to Roanoke Salem Family Medicine again until January 26, 2015, after his insured status expired. At that time, plaintiff reported that he had been exercising for forty-five minutes on his treadmill, but had recently reduced his time to twenty minutes as a result of ankle pain. (Tr. 521). Plaintiff further advised that an orthopedist had recommended that he undergo surgery for a heel spur, but that he could not proceed with surgery while his diabetes was uncontrolled. (Tr. 521). On physical examination, plaintiff exhibited edema and limited range of motion in his left ankle. (Tr. 522). His medications were modified and he was counseled on diabetes management. (Tr. 523, 530). Plaintiff failed to appear for scheduled appointments in February and March of 2015, and he was advised that further missed appointments would result in dismissal from the practice. (Tr. 542). Subsequent efforts to reach Mr. Ward about scheduling lab work were unsuccessful. (Tr. 563).

The record indicates that plaintiff saw a podiatrist at Carilion Clinic Orthopaedic Surgery-Riverside on March 13, 2015 for ongoing pain in his left foot. Plaintiff reported that the pain had significantly increased over the previous month, and that he was unable to undergo surgery because he had lost his insurance. (Tr. 512). On examination, plaintiff exhibited tenderness along the course of the Achilles tendon, but his muscle strength and range of motion were normal, and there was "no noted edema or varicosities." (Tr. 514). An x-ray of plaintiff's left ankle revealed no fracture or dislocation. (Tr. 514).

Mr. Ward presented to New Horizons Healthcare on June 30, 2015 for a "general wellness exam" after being without medications for approximately three months. (Tr. 457). On physical examination, plaintiff's extremities were found to be normal, with "no edema" and "good tone and skin color." (Tr. 458). The examining clinician prescribed medications for diabetes and neuropathy, and discussed the need for continued regular exercise. (Tr. 459).

At the administrative hearing held on November 10, 2015, Mr. Ward testified that he experienced constant "electric" pain, which required him to switch positions every fifteen or twenty minutes throughout the day and night, and kept him from sleeping for more than two or three hours a day. (Tr. 49). He testified that the pain radiated from the bottom of his feet to the back of his thighs, and that he elevated his feet three times a day for at least thirty minutes in an effort to alleviate the pain and associated swelling. (Tr. 50, 57). Mr. Ward further testified that he had been using his grandfather's cane for approximately two years because the pain and swelling caused him to lose his balance, and that he could only stand without the cane for approximately five minutes. (Tr. 52–53, 59).

After considering all of the evidence of record, the Law Judge determined that Mr. Ward's impairments were not so severe as to prevent performance of certain sedentary work roles through his date last insured. In making this determination, the Law Judge found that Mr. Ward's

8

allegations of totally disabling physical limitations during the relevant time period were not entirely credible. The Law Judge noted that the record contained significant gaps in treatment and that plaintiff was repeatedly observed to be noncompliant with medication use and other treatment plans. (Tr. 20). Although plaintiff related the lack of treatment to the loss of Medicaid coverage, the Law Judge emphasized that the medical records revealed that plaintiff was insured through at least June of 2014, when he was last seen at Roanoke Salem Family Medicine, and that plaintiff denied having any issues with the cost of his diabetic medications. (Tr. 20). The Law Judge further emphasized that none of plaintiff's treating physicians offered opinions on his behalf or otherwise suggested that plaintiff's impairments resulted in more significant functional limitations than those identified by the Law Judge. The Law Judge also noted that plaintiff's medical records made no mention of the need to use a cane or elevate his legs for a significant portion of the day, that plaintiff reported being able to walk on his treadmill for twenty to forty-five minutes in 2015, and that he was found to have full range of motion and no sensory or motor deficits on physical examination. (Tr. 21).

On appeal to this court, Mr. Ward, through counsel, makes two arguments in support of his motion for summary judgment. First, Mr. Ward argues that the Law Judge failed to adequately address his obesity in evaluating his residual functional capacity (RFC). Guidelines from the Social Security Administration recognize that obesity "can cause limitation of function," and that an "assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR No. 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002). However, obesity does not automatically "increase the severity or functional limitations" of other impairments, Id., and "the Law Judge need not 'include a lengthy analysis, or indeed, any precise analysis regarding

9

obesity.'" Rowlett v. Berryhill, No. 7:17-cv-00070, 2018 U.S. Dist. LEXIS 10059, at *10 (W.D. Va. Jan 22, 2018) (quoting Richards v. Astrue, No. 6:11-cv-00017, 2012 U.S. Dist. LEXIS 92594, at *18 (W.D. Va. July 5, 2012)).

In this case, the Law Judge expressly noted that he had "considered the claimant's obesity singly and in combination with other alleged impairments in determining [the claimant's] residual functional capacity." (Tr. 10). The Law Judge found that Mr. Ward's obesity was not disabling, and that it did not "contribute to a finding of disability when assessed with [his] other medically determinable impairments." (Tr. 10). The Law Judge ultimately ruled that Mr. Ward retained the capacity to perform a range of sedentary work, despite "the combination of [his] impairments, including neuropathy, obesity, and left heel spur." (Tr. 20). The Law Judge emphasized that none of plaintiff's treating physicians had indicated that the combined effects of plaintiff's obesity and other impairments rendered him disabled or otherwise resulted in additional functional limitations. (Tr. 19). Upon review of the record, the court concludes that the Law Judge properly considered the impact of plaintiff's obesity in determining his residual functional capacity, and that substantial evidence supports the Law Judge's finding that this impairment did not prevent him from performing a range of sedentary work.

Second, relying on the decision of the United States Court of Appeals for the Fourth Circuit in Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017), Mr. Ward contends that the Law Judge's assessment of his testimony and subjective complaints is not supported by substantial evidence. In particular, plaintiff argues that the Law Judge failed to adequately consider his alleged need to frequently elevate his legs. Although Mr. Ward testified at the administrative hearing that he needed to elevate his legs multiple times a day to relieve pain and swelling, the Law Judge found that the plaintiff's statements regarding the limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record. In reaching his decision, the

Law Judge recognized that Dr. Quraishi had recommended on one occasion in April of 2014 that plaintiff elevate his legs and wear compression stockings. (Tr. 472). However, the Law Judge emphasized that there was no indication that plaintiff would need to elevate his legs for a significant portion of the day, and that subsequent medical records did not consistently reflect the same symptoms of swelling observed by Dr. Quraishi. (Tr. 20). Indeed, when examined in June of 2015, plaintiff's extremities were found to be "normal," with "no edema, good tone and skin color." (Tr. 458). Likewise, plaintiff was found to have no edema or varicosities when examined by a podiatrist in March of 2015. (Tr. 514).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings or his assessment of plaintiff's residual functional capacity. The Law Judge considered plaintiff's medical history along with Mr. Ward's own allegations regarding the symptoms of his impairments. The court agrees that Mr. Ward's allegations of totally disabling symptoms and limitations are inconsistent with the objective findings on physical examination, his own statements to practitioners, and the recommended course of treatment, which included regular exercise. Thus, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit plaintiff's testimony, as well as his evaluation of plaintiff's residual functional capacity through the date last insured.

In affirming the Commissioner's final decision, the court does not suggest that Mr. Ward was free of all pain and discomfort during the relevant time period. Indeed, the medical evidence confirms that plaintiff suffered from impairments that could be expected to result in subjective limitations. However, no physician suggested that Mr. Ward was totally disabled for all forms of work or required greater work-related limitations than those identified by the Law Judge. The record simply does not include medical evidence that is consistent with totally disabling symptomatology prior to the expiration of plaintiff's insured status. It must be recognized that the

11

inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Mr. Ward's claim for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 18th day of December, 2018.

_____
Senior United States District Judge